UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

JOSEPHINE C. BELLO, M.D., PLC,
    Debtor.
_____/

Case No. 18-30456-dof
Chapter 11 Proceeding
Hon. Daniel S. Opperman

JOSEPHINE C. BELLO, M.D., PLC,
    Plaintiff,

v.

ALEX AZAR, in his capacity as SECRETARY
OF THE UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES and
CENTERS FOR MEDICARE AND MEDICAID SERVICES,
    Defendants.
_____/

Adversary Proceeding
Case No. 18-3042-dof

## OPINION GRANTING DEFENDANTS' MOTION TO DISMISS

The Plaintiff, Josephine C. Bello, M.D., PLC ("Plaintiff"), filed this adversary proceeding seeking the turnover of funds held by Defendants, Alex Azar, the Secretary of the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services, and the Wisconsin Physicians Service ("Defendants")[1] by virtue of certain recoupment rights claimed by Defendants. Defendants seek dismissal of Plaintiff's complaint because this Court lacks jurisdiction in that Plaintiff has not exhausted its administrative remedies. Plaintiff argues this Court does have jurisdiction because of an exception. After careful review of the pleadings and consideration of arguments of counsel in open Court, the Court grants Defendants' Motion to Dismiss because it lacks jurisdiction to consider this case, at this time.

---

[1] At oral argument, counsel reported that Wisconsin Physicians Service ("WPS") may not be a proper party and that its role would be discussed later. Subsequently, Plaintiff and Defendants stipulated to the dismissal of WPS as a party Defendant.

1

## Factual Background[2]

Plaintiff Josephine C. Bello, M.D., PLC ("Plaintiff" or "Debtor"), is a family medicine practice in Michigan. Dr. Josephine Bello is its owner and director. Under the Medicare Supplier Agreement, Debtor agreed to accept assignment of Medicare Part B payments. This means Debtor agreed to request direct Part B payments from the Medicare program.

On January 14, 2015, the Centers for Medicare & Medicaid Services ("CMS"), the agency within the U.S. Department of Health and Human Services ("HHS") that administers the Medicare program, through a contractor, sent a letter to Debtor requesting information for an audit to ensure that Medicare claims had been billed and paid in an appropriate manner. On August 12, 2016, CMS notified Debtor of the results of a post-payment program integrity review, resulting in several claims being reopened based on data analysis showing that it was aberrant in billing and reimbursement as compared to its peers. The reopening led to further reviews and data analysis, and in a letter dated September 9, 2016, WPS, a Medicare contractor, notified Debtor of an overpayment in the amount of $1,000,844.00.

In that letter, WPS informed Plaintiff about payment withholding or recoupment, interest assessment, and appeals procedures, all consistent with the supplier agreement. On September 20, 2016, Plaintiff filed a request for redetermination with WPS. WPS issued an unfavorable redetermination decision to Plaintiff on November 7, 2016. WPS found that Plaintiff's records did not support the medical necessity for billed services, did not support the level of billed services, did not substantiate the medical need for home visits, and did not substantiate the medical need for diagnostic tests.

---

[2] Plaintiff does not seriously contest Defendants' description of the factual background, statutory and regulatory background, or recitation of legal standard determining lack of subject matter jurisdiction, so the Court adopts Defendants' statements in pages 2-7 of Defendants' brief.

On February 1, 2017, Plaintiff filed a request for reconsideration with a different Medicare contractor known as a qualified independent contractor ("QIC"). On October 3, 2017, the QIC issued a partially favorable decision and the principal amount of the overpayment was reduced from $1,000,844.00 to $732,456.00 with interest (at that time) of $73,532.53.

Plaintiff then filed a third level of appeal on November 10, 2017, by making a request for an ALJ hearing with the Office of Medicare Hearings and Appeals. The appeal is pending and not yet completed.

On March 5, 2018, Plaintiff filed for bankruptcy under Chapter 11 of the Bankruptcy Code and, on May 21, 2018, filed this Adversary Complaint. In its Complaint, Plaintiff alleges that, on an annual basis, its Medicare Receivables represent approximately 35% of Plaintiff's revenues, averaging about $250,000.00 to $350,000.00 per year. Complaint, para. 12. Plaintiff asks for, among other things, the United States to be compelled to turn over the recouped Medicare Receivables and to "end the suspension of payments."

Defendants filed the instant motion to dismiss (the "Motion") on September 14, 2018, arguing the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) as the Court lacks jurisdiction to decide an unexhausted Medicare dispute. Alternatively, Defendants argue that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as there is an absolute right to offset overpayments notwithstanding the bankruptcy, and where Plaintiff has failed to establish the necessary elements to support issuance of an injunction. Plaintiff filed an objection to the Motion on November 2, 2018, in which Plaintiff argues there is no jurisdictional bar that would preclude a bankruptcy court from hearing a Medicare dispute. Moreover, Debtor argues that it should not be required to exhaust remedies as it has already waited for over a year for a hearing date in front of an administrative law judge, and

it will be forced out of business if Defendants can continue to offset future payments to recoup the past alleged overpayments. On November 30, 2018, Plaintiff filed a reply brief.

## Statutory and Regulatory Background

### A. Medicare Part B

Congress created the Medicare program, under Title XVIII of the Social Security Act, to pay for the medical care of the aged and disabled. 42 U.S.C. § 1395 *et seq.* Title XVIII establishes, among other things, hospital insurance programs (Part A), and supplementary medical insurance (Part B). Many tasks of the government's administration of Part B is conducted through Medicare administrative contractors. 42 U.S.C. § 1395u(a); 42 C.F.R. § 405.370. This matter involves Part B payments.

Medicare Part B is a voluntary program of supplementary medical insurance covering physician services and some other medical and health services such as outpatient hospital services, x-rays, and durable medical equipment. When a Part B beneficiary receives covered services or goods from a provider, the beneficiary is responsible for paying the service provider and Part B payment can be made to the beneficiary. 42 U.S.C. § 1395u(b)(6); 1395u(h). However, the service provider may also execute a Medicare Participating Physician or Supplier Agreement ("Supplier Agreement"). This agreement sets forth many rights and corresponding responsibilities for the supplier. "Supplier" refers to a physician or other practitioner, a facility, or other entity (other than a provider of services) that furnishes items or services under Part B. 42 U.S.C. § 1395x(d).

First, the supplier receives the right to directly bill Medicare for Part B payments and, in return, receive direct and timely reimbursement from Medicare rather than having to seek payment directly from the beneficiary/patient. 42 U.S.C. §§ 1395u(b)(3)(B)(ii), (b)(6);

1395u(h). The supplier agrees to accept the Medicare payment as payment in full and may not charge the beneficiary any additional amounts apart from applicable deductibles and copayments. *See* Supplier Agreement; *see also* 42 U.S.C. § 1395u(b)(3)(B)(ii). However, the participating supplier agrees that, "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws" and on the supplier's compliance with all applicable conditions of Medicare. The supplier explicitly agrees that Medicare may recoup past overpayments from future payments. The Medicare enrollment application requires the supplier to certify that "I agree that any existing or future overpayment made to the supplier by the Medicare program may be recouped by Medicare through the withholding of future payments." The Supplier Agreement renews automatically each year unless either the supplier or CMS terminates it.

### 1. The Payment of Claims

Medicare covers only services and items that are medically "reasonable and necessary." *See* 42 U.S.C. § 1395y(a), §1395u. There are numerous exclusions to coverage and a supplier such as Debtor must furnish to the Medicare contractor sufficient information to determine whether payment is due and in, if so, in what amount. 42 C.F.R. § 424.5(a)(6); *see also generally* 42 C.F.R. Subchapter B, Part 414; 42 U.S.C. §§ 1395l(e),1395u, 1395y(a).

To be paid for covered services and items, a supplier must file a claim for payment ("claim" or "Medicare claim"). Upfront payment through Part B does not necessarily mean the matter is concluded because a Medicare claim remains potentially subject to post-payment review and recoupment of Medicare payments, in whole or in part. Further, contractors can conduct reviews and audits for the purposes of ensuring the integrity of the Medicare program. 42 U.S.C. § 1395ddd; 42 C.F.R. Subchapter B, Part 420.

5

Claims can also be reopened. *See* 42 U.S.C. § 1395ff(b)(1)(G) (statutory authorization for reopening Medicare claims); 42 C.F.R. § 405.980. After reopening, and if the contractor revises the initial determination regarding the claims, the supplier can then appeal the revised determination. 42 C.F.R. § 405.904(a)(2); *see* 42 U.S.C. § 1395ff.

### 2. The Administrative Appeals Process

If a supplier believes a claim determination is incorrect, it can avail itself of the administrative appeals process. 42 C.F.R. Part 405, Subparts H and I; *see* 42 U.S.C. § 1395ff. The process has several steps. First, a supplier may seek a redetermination through the appeals department of the Medicare contractor. 42 C.F.R. § 405.940. If the supplier is dissatisfied with this redetermination decision, it may then request a reconsideration decision, which is issued by a different Medicare contractor known as a QIC. 42 C.F.R. § 405.960. If satisfaction is still not achieved, the third step is to request a hearing before an ALJ. 42 C.F.R. § 405.1000. The fourth step is to request a review by the Medicare Appeals Council ("Appeals Council"). 42 C.F.R. § 405.1100. The Appeals Council's decision is final and binding on all parties. 42 C.F.R. § 405.1130. It is only after completing all four levels of review that a supplier has exhausted its administrative remedies, and it may then file an action in federal district court, seeking judicial review of the agency's decision. 42 C.F.R. §§ 405.1130, 405.1136; *see* 42 U.S.C. §§ 405(g), 405(h), 1395ff(b)(1)(A), 1395ii.

### B. Motion to Dismiss Standard under Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a "lack of jurisdiction" by motion as a defense to a complaint and, if the court finds that it lacks subject matter jurisdiction, the court must dismiss the action. Fed.R.Civ.P. 12(b)(1), (h)(3); Fed.R.Bankr.P. 7012. The party invoking federal subject matter jurisdiction bears the burden of proving it. *United States*

*v. Fata (In re Korff),* 2016 U.S. Dist. LEXIS 117534 at *9-*10 (E.D. Mich. Aug. 31, 2016) (*citing Dismas Charities, Inc. v. United States Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005)). Challenges to subject matter jurisdiction can be facial or factual. Under a facial attack, all of the allegations in the complaint must be taken as true. *Id.* at *10 (citations omitted). Under a factual attack, the court can weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction. *Id.* "Where the defendant brings a factual attack on the subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review." *Id.* (citations omitted).

## Analysis

### A. Jurisdictional Standards

The Court must determine whether it has jurisdiction to consider Plaintiff's Complaint. Generally, as to district courts, Title 42, Sections 405(g) and (h), govern court review of a provider's request for reimbursement. Section 405(g) provides for federal district court review only of a final decision of the Secretary made after an administrative hearing. Section 405(h), made applicable by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act. 42 U.S.C. § 405(h); *BP Care, Inc. v. Thompson*, 398 F.3d 503, 508 (6th Cir. 2005). In *BP Care*, the Sixth Circuit Court of Appeals upheld the stringent jurisdictional bar of § 405(h) and found that the district court erred because it "did not have jurisdiction under 28 U.S.C. § 1331 to hear any of [plaintiff's] claims," because "each of [plaintiff's] claims arise under the Medicare Act, and [plaintiff] failed to present the claims, and exhaust its remedies in an HHS administrative proceeding, as required by 42 U.S.C. §§ 1395ii and 405(h).". *Id.* at 508.

7

The Sixth Circuit Court of Appeals has repeatedly dismissed actions involving Medicare where a plaintiff has not yet exhausted its administrative remedies. *See, e.g., Farkas v. Blue Cross & Blue Shield of Mich.*, 24 F.3d 853, 860-61 (6th Cir. 1994); *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995); *Cathedral Rock of North Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 357-66 (6th Cir. 2000); *S. Rehab. Grp., P.L.L.C. v. Sec'y of Health & Human Servs.,* 732 F.3d 670, 683 (6th Cir. 2013).

And this same jurisdictional bar has been applied to bankruptcy courts in the majority of cases. *Andrews v. Blue Cross & Blue Shield of Mich. (In re Clawson Med., Rehab. & Pain Care Ctr., P.C.)*, 12 B.R. 647, 652-53 (E.D. Mich. 1981) is of particular interest because that court stated: "The bankruptcy court does not have any greater jurisdiction to invade and ignore the congressionally established procedures to challenge the decisions of the Secretary than does the district court." *See also N.Y. Therapeutic Tech. v. Shalala (In re Orthotic Ctr., Inc.)*, 193 B.R. 832, 835 (N.D. Ohio 1996); *Tri County Home Health Servs., Inc. v. United States Dept. of Health & Human Servs. (In re Tri County Home Health Servs., Inc.)*, 230 B.R. 106, 108 n.1 (Bankr. W.D. Tenn. 1999); *United States Dept. of Health & Human Servs. v. James*, 256 B.R. 479, 481 (W.D. Ky. 2000); *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC (In re Bayou Shores, SNF, LLC)*, 828 F.3d 1297, 1322, 1325-26 (11th Cir. 2016); *Excel Home Care, Inc. v. United States Dept. of Health & Human Servs.*, 316 B.R. 565, 573 (D. Mass. 2004); *House of Mercy, Inc. v. Ctrs. for Medicare & Medicaid Servs., et. al. (In re House of Mercy, Inc.),* 353 B.R. 867, 872 (Bankr. W.D. La. 2006).

However, a minority of courts have held that the statutory bar on federal jurisdiction over unexhausted Medicare disputes does not apply to bankruptcy court jurisdiction under 28 U.S.C. § 1334, reasoning the plain language of § 405(h) expressly bars only § 1331 and § 1346 jurisdiction

over unexhausted Medicare disputes. *See, e.g., Nurses' Registry & Home Health Corp. v. Burwell (In re Nurses' Registry & Home Health Corp.)*, 533 B.R. 590 (Bankr. E.D. Ky. 2015); *Sullivan v. Town & Country Home Nursing Servs., Inc. (In re Town & Country Home Nursing Servs., Inc.)*, 963 F.2d 1146 (9th Cir. 1992). The *Nurses' Registry* Court criticized the majority view that, based on legislative history, the limitation to § 1331 and § 1346 contained in § 405(h) is the result of a drafting or codification error. *Id.* at 595. According to the *Nurses' Registry* Court, the drafting error analysis fails because the power of courts to correct apparent drafting errors is sharply limited, and because, despite a congressional statement to the contrary, the amendment that in part removed specific reference to bankruptcy jurisdiction statute also contained substantive amendments to Social Security and Medicare. *Id.*

In contrast, the majority view is that the amendments removing the statute that specifically referenced a bankruptcy court's jurisdiction was the result of a drafting error. *See, e.g., Bayou Shores*, 828 F.3d at 1314, in which the Eleventh Circuit Court of Appeals held the same in accordance with the Third, Seventh, and Eighth Circuit Courts of Appeal. The *Bayou Shores* Court based its holding on a detailed review of the legislative history, the lack of any indication Congress was clearly making a fundamental change to reverse decades of Medicare policy, and Congress' statement in the statute itself that the amendments in question should not be interpreted as making any substantive change in the law. *Id.* at 1319-20. *See also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-90 (7th Cir. 1990); *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998); *Nichole Med. Equip. & Supply, Inc. v. Tricenturion, Inc.*, 694 F.3d 340, 346-47 (3rd Cir. 2012).

While Plaintiff vigorously argues that this Court should adopt the minority view and allow this case to continue, the Court adopts the majority view endorsed by the Sixth Circuit Court of

Appeals. While the minority line of cases note that later revisions omitted reference to bankruptcy court jurisdiction, the revisions also state that Congress did not intend to effectuate any substantive change. Absent a clear direction from Congress or the Sixth Circuit Court of Appeals, the majority should be followed. Since the Plaintiff has not exhausted its administrative remedies, this Court does not have jurisdiction.

### B. Michigan Academy Exception

In *Nurses' Registry*, the court also found that it had jurisdiction based on an exception to the exhaustion requirement promulgated in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). *Nurses' Registry,* 533 B.R. at 593. The "Michigan Academy" exception is an exception to the statutory bar of unexhausted Medicare disputes in cases where the application of such bar would not lead to a review through the agency but would instead mean no review at all. *Id. (citing Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 17 (2000)). In *Nurses' Registry*, the United States Supreme Court found that waiting for the Medicare process to play out would have caused the Debtor to become defunct; thus, channeling the Debtor's claims through the agency would equate to no judicial review of the Debtor's claims. *Id.*

However, the Sixth Circuit has held that the *Michigan Academy* exception "should not serve to circumvent established mechanisms of judicial review. *Giesse v. Dept. of Health & Human Servs.,* 522 F.3d 697, 707 (6th Cir. 2008) (holding that the *Michigan Academy* exception was inapplicable as the plaintiff was not without judicial remedy). The Sixth Circuit has held that the exception to the exhaustion requirement should only apply where application of the jurisdictional bar would mean no review at all. *BP Care, Inc.*, 398 F.3d at 509-10. In assessing the applicability of the *Michigan Academy* exception, the relevant question is whether a hardship turns the agency channeling requirement into a complete preclusion of judicial review, and the fact

that the claims have taken a long time to be resolved or that the delay involves another hardship does not necessarily mean that there is no review at all. For example, in *Rehab. Grp.*, 732 F.3d at 681-82, the claimant waited eleven years for a redetermination from the Secretary of Health and Human Services, but the Sixth Circuit Court of Appeals determined that judicial review was not futile.

While an exception as articulated in *Michigan Academy* may exist, the foundation for an exception is not present in this case. As argued by counsel in oral argument, certain requests to expedite the review process may be made that would accelerate administrative review. But Plaintiff has not yet made such a request.[3] Regardless, while Plaintiff has been waiting for over a year for an administrative law judge hearing, this wait does not constitute a sufficient basis to conclude Plaintiff does not have an ability to have an adverse decision reviewed. For example, the approximate one-year wait is much less than the 11-year wait endured by the Plaintiff in *Southern Rehab*.

### **Conclusion**

The Court lacks jurisdiction to hear unexhausted Medicare disputes and no exception to this rule applies in this case. The Court grants Defendants' Motion to Dismiss for this reason and does not address the remaining issues raised by Defendants.

Counsel for Defendants is directed to prepare and submit an appropriate order consistent with this Opinion and the entry of order procedures of this Court.

---

[3] The statements made by counsel at oral argument were not agreed to by Plaintiff, so the Court did not include those statements as factual findings. For purposes of this Opinion, the Court adopts those limited statements as factual findings.

11

**Signed on December 20, 2018**